FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT, E.D.N.Y.
★ JUL 1 2 2005 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

In re: ZYPREXA
PRODUCTS LIABILITY LITIGATION

-----------------------------------------------------------x

THIS DOCUMENT RELATES TO:

ALL ACTIONS

-----------------------------------------------------------x

MEMORANDUM &
ORDER
04-MD-01596 (JBW)

Jack B. Weinstein, Senior United States District Judge:

Following announcement that they had achieved the outline of a settlement in this multidistrict pharmaceutical case, at the request of the parties the court stayed discovery until July 31, 2005. *See* June 10, 2005 Release of Eli Lilly; Order of June 23, 2005. The purpose of the stay was in large measure to permit counsel to consider settlement details and future procedure. The parties shall appear on August 10, 2005 at 11:30 a.m. to discuss ongoing procedures.

The court understands that resolution of this litigation contemplates settlement of individual cases. The usual mass tort procedural devices such as a class action or consolidation are not expected to be utilized. While a number of putative class actions were commenced, the proposed representative plaintiffs are in the process of settling their individual claims, possibly aborting any possible class action.

If seriatim individual settlement expectations are realized, those attorneys now serving as plaintiffs' lead counsel and proposed counsel in putative class actions will probably soon settle all or most of their own pending cases. They would then arguably have no individual adversarial

interest in advancing further general discovery. *Cf.* Samuel Issacharoff and John Fabian Witt, *The Inevitability of Aggregate Settlement: An Institutional Account of American Tort Law*, 57 VAND. L. REV. 1571, 1631 (2004) ("[T]he class action confers a state-created monopoly on representation."); Linda S. Mullenix, *Taking Adequacy Seriously: The Inadequate Assessment of Adequacy in Litigation and Settlement Classes*, 57 VAND. L. REV. 1687, 1744 (2004) ("To assure that settlement classes in the future are both viable and enduring, all actors involved with class litigation need to assert more effort in ensuring actual, and not presumed, compliance with the rule, especially with regard to the adequacy of representation requirement.").

A special master is already supervising discovery and other special masters are, at the parties' request, to be used in settlement negotiations. *See* Order of Dec. 2, 2004; Case Management Order No. 12 (June 30, 2005).

The court suggests that the parties consider a third type of special master in the present situation, where it is likely that lead counsel will settle all their cases before discovery is completed in this court under the direction of the Multidistrict Panel: namely, a plaintiff-discovery special master who would actually conduct, as opposed to supervise, general discovery on behalf of all plaintiffs.

Such a special master would be appointed by the court to act independently of the court and present counsel. He or she would not consult with the court, but would instead act adversely to defendant as the representative of all plaintiffs in general aspects of discovery. This procedure would avoid a future claim that those in charge of plaintiffs' discovery did not aggressively prosecute discovery because they were in the thrall of defendants with whom they were seeking to settle, or had settled, on terms favorable to their own clients.

2

The plaintiff-discovery special master would conduct general discovery of such issues as scientific indications of causation which are central to all cases. Individual plaintiffs' attorneys would continue to conduct discovery of individual issues such as plaintiffs' medical histories. The plaintiff-discovery special master would have all the powers of an attorney for all plaintiffs in general discovery aspects of the case; the results of that discovery, including *Daubert* hearings, would be applicable in all pending cases.

Fee terms for this plaintiff-discovery special master would be determined by the court and paid for on a basis to be determined in advance by the court after consulting the parties. His or her functions would be quite different from that of a court-appointed scientific expert under Rule 706 of the Federal Rules of Evidence.

A conceptual problem is that such a procedure would be a departure from the usual United States litigation style, with adverse lawyers representing particular clients or groups of clients in discovery, based on retainer agreements with clients or agreements among counsel. Lead counsel in discovery usually represent substantial groups of plaintiffs by individual retainer agreements or by lawyer-reference in run-of-the-mill mass tort actions.

A plaintiff-discovery special master procedure would, in effect, utilize a hybrid quasi-administrative technique combined with traditional adversary proceedings. Given the circumstances, it appears that this may be a viable solution to the problem posed by piece-meal ongoing settlement of individual cases, and constantly changing open cases with transient plaintiffs' counsel. It would, in effect, employ a form of administrative procedure for claim prosecution. *Cf.* Air Transportation Safety and System Stabilization Act, Pub. L. No. 107-42, 115 Stat. 230 (2001) (establishing compensation fund for individuals or relatives of deceased
3

individuals who were injured as a result of the terrorist attacks of September 11, 2001); Asbestos Compensation Act of 2000, H.R. 1283, 106th Cong. (1999) (introduced as the Fairness in Asbestos Compensation Act of 1999; companion bill to S. 758); Black Lung Benefits Act of 1972, 30 U.S.C. §§ 901-45 (1994); National Childhood Vaccine Injury Compensation Act of 1986, 42 U.S.C. § 300aa *et seq.*; Note, *Compensation for Mass Private Delicts: Evolving Roles of Administrative, Criminal, and Tort Law*, 2001 U. ILL. L. REV. 947.

SO ORDERED.

Jack B. Weinstein

Dated: July 12, 2005
       Brooklyn, New York